## IN RE COMPLAINT AGAINST DISTRICT JUDGE J. PHIL GILBERT

### No. 07-15-90073

Judicial Council of the Seventh Circuit.

June 1, 2016

### MEMORANDUM

Complainant filed a judicial misconduct complaint against District Judge J. Phil

Gilbert. Chief Judge Diane P. Wood appointed a Special Committee to investigate the complaint pursuant to Rule 11(f) of the Rules for Judicial-Conduct and Judicial-Disability Proceedings. The Special Committee issued the attached report which the Seventh Circuit Judicial Council adopted.*

This complaint is dismissed pursuant to Rule 20(b)(1)(B) on the ground that the subject judge has promised to take effective correction action.

Attachment

## JUDICIAL COUNCIL OF THE SEVENTH CIRCUIT

## 219 SOUTH DEARBORN STREET

## CHICAGO, ILLINOIS 60604

May 4, 2016

COLLINS T. FITZPATRICK

CIRCUIT EXECUTIVE

PHONE (312) 435-5803

Report to the Judicial Council

Chief Judge Wood appointed this Special Committee to investigate a complaint (No. 07-15-90073) under the Judicial Conduct and Disability Act of 1980. See Rule 11(f) of the Rules for Judicial-Conduct and Judicial-Disability Proceedings. The Committee received written submissions and held a hearing on April 14, 2016, at which the subject judge and his counsel made oral presentations and answered questions. The Committee recommends that the Council dismiss the complaint under Rule 20(b)(1)(B) on the ground that the subject

---

* Chief District Judge Michael J. Reagan recused himself in this matter. Chief District

Judge William M. Conley concurs in the dismissal of the complaint.

judge has promised to take effective corrective action.

The facts are simple to state—and, because many facts already are public knowledge, the subject judge (J. Phil Gilbert of the Southern District of Illinois) has consented to public disclosure of his identity. To the extent the facts may be in dispute, this report states the Committee's findings.

Judge Gilbert's family has for three generations been affiliated with Southern Illinois University. His grandfather was a professor there, and his father was Chairman of the Illinois Senate Education Committee and instrumental in securing the funds to turn a small teacher's college into a full-fledged university, which now includes a law school. Judge Gilbert has been eager to serve SIU and accepted an appointment to its Board of Trustees. Governor Rauner nominated him; the state Senate confirmed his appointment; he has served since February 27, 2015, as a Trustee. Under Illinois law, Trustees are responsible for all aspects of the management of the University, including selecting its administrators, approving faculty appointments, and managing its budget (including fundraising to supplement appropriations from the state).

When joining the Board, fudge Gilbert took several steps to avoid ethical problems. He ensured that he will not be compensated by the University—not even via perks such as basketball tickets. He accepts reimbursement of expenses but nothing more. He asked the Board to insulate him from all tasks related to raising money and evaluating legal issues, since federal judges can neither render legal advice nor participate in fundraising. See Canons 4A(5) and 4C of the Code of Conduct for United States Judges. He leaves the room when issues concerning legal matters or fundraising come up. This is the approach that the Committee on Codes of Conduct recommends (see Advisory Opinion 36) for judges serving on the board of a private college or university. Judge Gilbert also instructed the Clerk of the Southern District not to assign him any litigation by or against the University or any of its employees, and to transfer to other judges any cases already on his docket. After consulting with Collins Fitzpatrick, the Circuit Executive, Judge Gilbert concluded that these steps suffice to avoid ethical problems.

A lawyer practicing in the Southern District filed a complaint under the 1980 Act, contending that Judge Gilbert's service on SIU's Board of Trustees violates the Code of Conduct for United States Judges. The complaint cited Canon 4B(1) in particular. This provides that a judge should not serve on an organization if that organization is regularly involved in litigation before him or his colleagues.

Reviewing this complaint, Chief Judge Wood concluded that Judge Gilbert's service on the Board does not violate Canon 4B(1). After all, Canon 4F provides that a judge may accept a governmental appointment that concerns the law, and Canon 4B itself provides that it is permissible to engage in civic and charitable activities (provided that the judge does not render legal advice or participate in fundraising). The steps Judge Gilbert has taken prevent a violation of Canon 4B(1), Chief Judge Wood concluded.

But the process of researching the complaint led the Chief Judge to think that there could be a problem under Canon 4F, which reads:

*Governmental Appointments.* A judge may accept appointment to a governmental committee, commission, or other position only if it is one that concerns the law, the legal system, or the admin-

istration of justice, or if appointment of a judge is required by federal statute. A judge should not, in any event, accept such an appointment if the judge's governmental duties would tend to undermine the public confidence in the integrity, impartiality, or independence of the judiciary. A judge may represent the judge's country, state, or locality on ceremonial occasions or in connection with historical, educational, and cultural activities.

This Canon says that a governmental appointment (unlike service in a private organization) is appropriate *"only if* it is one that concerns the law, the legal system, or the administration of justice" (emphasis added). The Committee on Codes of Conduct concluded in Advisory Opinion 44 that an appointment to the governing board of a public college or university does not satisfy this condition, because most activities of a university (and its board) do not concern the law, the legal system, or judicial administration. The Chief Judge also asked for the advice of a former member of the Committee on Codes of Conduct, who concluded that a judge's service on any public university's board (whether or not the university has a law school) is incompatible with Canon 4F.

The Chief Judge notified Judge Gilbert of these concerns. He replied that he does not think Canon 4F conclusive and gave two principal reasons. First, he thinks Advisory Opinion 44 to be incorrect and contends that, as long as the public university has a law school, judicial service satisfies the condition in the first sentence of Canon 4F. He observed that service on a private university's board is proper and thinks that service on a public university's board should be treated the same way. Second, he contends that Advisory Opinion 44 is distinguishable because it does not state

expressly whether the university under consideration includes a law school. Judge Gilbert added that service in the public interest should be encouraged and that his activities (given the precautions that we have mentioned) do not call into question the integrity, impartiality, or public reputation of the judiciary, the principal reasons for the Canons as a whole.

Because Judge Gilbert did not agree with Chief Judge Wood's tentative legal conclusions, he asked her to appoint a Special Committee to make a further inquiry. She did so, and this report to the Council is the result.

The Special Committee does not see a sufficient reason to reject the interpretation of Canon 4F that appears in Advisory Opinion 44. A university's law school is a small part of the university's operations. To say that an appointment having *anything* to do with the law satisfies the first sentence of Canon 4F would be to dilute the rule so substantially as to be ineffectual—in a complex world, almost everything is related to everything else. A judge who decided to run for the state legislature might contend that, because the state's system of public universities contains one or more law schools, service in the legislature is authorized by Canon 4F. Advisory Opinion 44 draws a line by saying that, to be authorized, the group on which the judge serves must be limited to the law or legal system (or at least that this must be its predominant end). Some line is essential, and the line in Advisory Opinion 44 has the virtue of being easy to understand and apply.

For the same reason, the Special Committee does not think that Advisory Opinion 44 can be disregarded on the ground that it discusses universities as a class, without mentioning whether any given university has a law school. The opinion was written to be general. Most state universi-

ty systems do have law schools (Alaska's maybe the only exception); it makes most sense to read Advisory Opinion 44 as applicable to all public universities.

And although the Special Committee agrees with Judge Gilbert that public service is to be encouraged—we find that Judge Gilbert has acted transparently, in good faith, and with the best of intentions—the fact remains that Canon 4F distinguishes service on public bodies from service with private organizations, which is covered by Canon 4B. This difference reflects a belief that a federal judge normally should not hold an appointment in a different branch of the federal government (unless required by federal statute) or under a different sovereign. Some state judicial systems categorically forbid all non-judicial appointments. The first sentence of Canon 4F allows such appointments when limited to legal matters, but the norm against serving multiple sovereigns (or multiple branches of government) remains strong and must be enforced.

These considerations have led the Special Committee to ask what steps now are required. That Judge Gilbert took senior status several years before accepting the appointment to the SIU Board raises the possibility that he can continue in both capacities under a proviso that appears at the end of the Canons. A section captioned "Compliance with the Code of Conduct" provides in Part C:

> *Retired Judge.* A judge who is retired under 28 U.S.C. § 371(b) or § 372(a) (applicable to Article III judges), or who is subject to recall under § 178(d) (applicable to judges on the Court of Federal Claims), or who is recalled to judicial service, should comply with all the provisions of this Code except Canon 4F, but the judge should refrain from judicial service during the period of extrajudicial

> appointment not sanctioned by Canon 4F. . . .

A senior judge is "retired" for this purpose and must comply with all provisions of the Code *except* Canon 4F. Judge Gilbert need not resign from the bench, or from the state governmental body, but may hold both positions.

This leaves the question whether he must refrain from all judicial service as long as he remains on SIU's Board. Part C does not say that a judge "must" refrain from judicial service while the state appointment lasts. It says that the judge "should" do so, but should differs from must—and the use of "should" implies that this is not the only possible way to reconcile competing interests.

As we have mentioned, many states use a principle of categorical incompatibility: no judge may hold any other position under state or federal law. The Code of Conduct does not take that position. Part C of the Compliance provisions is one illustration. The fact that a judge may serve on the governing board of a state law school under the first sentence of Canon 4F itself is another.

Canon 4 as a whole begins with this statement of its objective:

> A judge may engage in extrajudicial activities, including law-related pursuits and civic, charitable, educational, religious, social, financial, fiduciary, and governmental activities, and may speak, write, lecture, and teach on both law-related and nonlegal subjects. However, a judge should not participate in extrajudicial activities that detract from the dignity of the judge's office, interfere with the performance of the judge's official duties, reflect adversely on the judge's impartiality, lead to frequent disqualification, or violate the limitations set forth below.

The Special Committee believes that Judge Gilbert's service on SIU's Board at the same time as he hears some cases would not "detract from the dignity of the judge's office, interfere with the performance of the judge's official duties, [or] reflect adversely on the judge's impartiality". The worst that could be said about the dual appointments is that being on the Board could "lead to frequent disqualification"—for the Committee believes that disqualification limited to suits in which SIU or one of its employees is involved is inadequate. SIU's Board administers public funds. This makes a member of its Board a fiduciary for the State of Illinois as a whole. Any suit that affects the state's finances could indirectly affect the finances available to the University system, and members of the Board make decisions that affect how much money the University needs (or wants) and thus affect the state's general finances.

This implies that disqualification from all cases to which the State of Illinois, or any of its employees, is a party, would best serve to avoid any appearance of partiality. The Special Committee is not sure whether state-wide disqualification also is essential under 28 U.S.C. § 455(b). Although § 455(b)(4) makes disqualification mandatory when a judge or member of the judge's household has a financial interest, no matter how small, § 455(b)(4)(iv) says that ownership of governmental securities is not a "financial interest" for the purpose of § 455(b) unless the litigation could have a "substantial" effect on their value. Perhaps the sort of interest that a fiduciary of a state university system has should be likened to an interest in governmental securities. But it would be hard for the public to understand so fine a line, and disqualification depends on whether reasonable observers would perceive a risk to impartiality. The Special Committee believes that reasonable, well-informed observers would conclude that a judge who is also a fiduciary for the state as a whole should not play any part in litigation to which the state or any of its employees is a party.

For an active judge, a need to avoid suits against the state in which the judge sits would "lead to frequent disqualification". But senior judges are different, and not just because Part C of the Compliance section makes an exception for them. Senior judges are different because they are entitled to hear fewer cases than active judges, and they are also entitled (in most if not all districts) to limit which cases they hear by subject-matter or the identity of the litigant. Some senior judges avoid criminal cases. Some opt out of all suits against the Commissioner of Social Security. It is within a senior judge's prerogative to avoid cases involving state litigants by reducing the caseload, opting out by the identity of the litigant, or both. A judge with the privilege of both cutting back on workload and excluding selected categories of litigants cannot be thought to be engaged in misconduct by taking an appointment that will lead to the exclusion of a single category of litigant.

The Special Committee asked Judge Gilbert at the hearing whether he would be willing to cease hearing all cases by and against the State of Illinois or any of its employees. He said that he would be willing (maybe even happy) to do this, and would accept other cases in exchange to continue carrying the same caseload. The Committee takes this as an offer of "corrective action," which the Committee believes is "appropriate."

True, hearing cases that do not involve Illinois differs from hearing no cases at all, which Part C of the Compliance section says that a judge "should" do. For the reasons we have explained, however, the

Special Committee does not see any threat to the goals of Canon 4 (or the Canons as a whole) in a solution that permits Judge Gilbert to continue to render service both to litigants—service that as a senior judge he is not obliged to perform—and to Southern Illinois University. It would not promote the interests of litigants to reduce the judicial capacity in the Southern District of Illinois, a small district with only four active judges. And the Special Committee finds Judge Gilbert's willingness to serve admirable.

One other thing has influenced our recommendation. The commentary to Rule 3 of the Rules for Judicial-Conduct and Judicial-Disability Proceedings observes that the Code of Conduct is in many respects aspirational, and that it is possible to depart from the Code without necessarily engaging in action "prejudicial to the effective and expeditious administration of the business of the courts," the subject of proceedings under the 1980 Act. See 28 U.S.C. § 351(a). The use of the word "should" in Part C of the Compliance section shows that its approach is one of those aspirational norms. Other ways to allow public service while ensuring expeditious and ethical handling of judicial business are possible, and the Special Committee concludes that the approach we have outlined is among them.

Judge Gilbert may have been unaware of Advisory Opinion 44 when he accepted the appointment. It is unfortunate that he did not consult the Committee on Codes of Conduct before accepting the Governor's offer. The Special Committee does not think that it would be appropriate to encourage other judges (especially those in larger districts, which more readily can tolerate a single senior judge's move to zero caseload) to accept such an appointment. For an active judge, such an appointment is absolutely forbidden under Canon 4F and Advisory Opinion 44. But for this senior judge, in this district, arranging not to hear any cases that concern the State of Illinois is an "appropriate corrective action," and the Special Committee therefore recommends that the Council dismiss the proceeding under Rule 20(b)(1)(B).

The Special Committee also recommends that this disposition be published, for the benefit of other judges and the public at large.

Rule 20(e) allows the Judicial Council to recommend to the Director of the Administrative Office of the United States Courts that public funds be made available to reimburse the subject judge's expenses after a corrective-action closure. We ask the Judicial Council to take that step.

Finally, although this subject is not technically within our remit, the Special Committee recommends that other judges of the Southern District discontinue their practice of recusing themselves in cases involving SIU—and certainly that they not extend this practice to the State of Illinois as a whole. We appreciate the desire to be absolutely safe, but nothing in § 455 or the Canons requires an entire district to recuse itself just because one judge is disqualified.

For example, if Judge Gilbert were to buy 100 shares of IBM stock, he would be disqualified in any suit involving IBM or a subsidiary corporation. But other judges of the district would not be disqualified. No reasonable, well-informed observer would suspect some other judge of ruling for IBM to do a favor for Judge Gilbert. It is well understood that disqualifications are personal and do not contaminate other judges of the same district.

The current practice in the Southern District of Illinois causes problems for judges in other districts, who must be designated to hear SIU-related cases and may need to travel substantial distances in order to discharge that responsibility. That in turn causes problems for litigants—not only litigants in the Southern District, whose suits may be put on hold until an out-of-district judge arrives to handle them, but also litigants in the districts served by the judges designated to hear the SIU cases. Travel time reduces the judge's capacity to resolve suits, which leads to longer queues for decision in districts outside the Southern District of Illinois.

If the Special Committee believed that Judge Gilbert's service on SIU's Board of Trustees disqualified *other* judges in the Southern District from SIU cases, or, worse, all Illinois cases, we would conclude that Judge Gilbert's offer to recuse from all Illinois suits would not be an "appropriate" corrective action. No judge should hold a position that has such consequences for other judges and for litigants in multiple districts. But because we believe that judges of the Southern District are acting from an excess of caution, and will return to their full calendars when this proceeding is resolved, the Special Committee believes that the Judicial Council should accept Judge Gilbert's offer of corrective action and close this proceeding.

This report represents the unanimous view of the Special Committee.

We enclose with this recommendation the complaint and the important correspondence, plus a copy of the audio of the hearing, as well as copies of Advisory Opinions 36 and 44.

Respectfully submitted,

Frank H. Easterbrook, Circuit Judge and Chair
Diane P. Wood, Chief Judge
Diane S. Sykes, Circuit Judge
Rebecca R. Pallmeyer, District Judge, Northern District of Illinois
Richard L. Young, Chief Judge, Southern District of Indiana

Enclosures